Matham, J.
The New York City and Northern Railroad Company was incorporated under the laws of New York, on the 1st day of March, 1818, by filing articles of association in the secretary of state’s office on that day with a capital of $2,250,000.
On the 1st day of May, 1818, said railroad company mortgaged its railroad, fixtures, rolling stock and franchise to Scott & Palmer, as trustees , for $1; 800,000, and on the 1st day of May, 1880, it executed another like mortgage to the Central Trust Company, for $4,000,000, and on the 3d day of July, 1881, a like mortgage to Forest and May, for $2,000,000. On the 22d day of July, 1881, a judgment and decree of foreclosure and sale was entered in the supreme court of the state of New York, in the favor of the Central Trust Company, on the first and second mortgages above-referred to, and on the seventeenth of August, said railroad and franchises were sold to William Martins, Arnold Marcus, George Warren Smith, Henry F. Dimock, George F. Storn, as a purchasing committee acting under a plan and agreement for the re-organization of the New York City and Northern Railroad Company, and they with others *651 associate themselves together and present articles of association to the defendant as secretary of state for the formation of a new railroad company to be known as the New York and Northern Railway Company, with a maxium capital stock of $9,000,000, to be divided into 90,000 shares, 30,000 of which shall be common stock, and 60,000 shares, thereof, shall he preferred stock.
On the presentation of such articles of association to the secretary of state for record, the defendant, Frederick Cook, as secretary of state, refuses to file the same unless and until the relator pay the tax of one-eighth of "one per cent on the capital stock, which the company is authorized to have, or upon the increase thereof in accordance with the provisions of chapter 143 of the Laws of 1886. This tax the relators refuse to pay and ask for a peremptory mandamus compelling the secretary of state to file said articles of association. It is not claimed that the relators have applied to or received permission from the railroad commissioners to increase the capital stock from $2,250,000 as required by chapter 133 of Laws of 1880. Section 1 of that act amends section 8 of chapter 140 of Laws of 1850, and prescribes the method in which capital stock of existing corporations may be increased, and the relators in not adopting the methods therein prescribed for increasing the capital stock of an existing corporation, seem by implication to treat the organization as a new corporation. It is true that they assume to re-organize under the provisions of chapter 430 of the Laws of 1874, and chapter 446 of the Laws of 1876. Chapter 430 of the Laws of 1874 provides that the purchasers under a judicial sale may organize a new corporation in the manner therein provided, and on executing and filing with the secretary of state certificates as therein provided, may be invested with all the powers, privileges and franchises which at the time of said sale belonged to or were vested in the corporation formerly owning the property so sold.
Subdivision 1 of section 1 of chapter 446, Laws of 1876, characterizes the company formed by purchasing on a foreclosure sale of a railroad as a new corporation, and the articles of association offered for record by the relators in its first paragraph calls the same a new organization and gives it a name differing from the one under which the one, to the rights of which the relators succeed by the foreclosure sale.
Under such circumstances the question is presented, whether the New York and Northern Railroad Company comes within the meaning of chapter 143 of the Laws of 1886. . Section 1 of that act provides as follows:
“Every corporation, joint stock company or association *652 incorporated by and under any general or special law • of this state, having capital stock divided into shares, shall pay to the state treasury, for the use of the state, a tax of one-eighth of one per cent upon the amount of capital stock which said corporation, joint stock company or association is authorized to have, and a like tax upon any subsequent increase thereof.”
It is difficult to see how the company proposed to be formed in this case differs from those provided for in this act.
It proposes the formation of a corporation under the laws of this state. Its capital stock is to be divided into shares. These attributes bring it clearly within the letter of the act of 1886.
But it is insisted that as a part of the assets represented by this capital stock is represented in the property and franchise of the defunct corporation, the relators who represent the property and franchise of the old corporation cannot be taxed under this act. As the right of the old company to the franchise is a vested right, and the application of the provisions of the law of 1886 to this company would take away or impair a vested right, they having succeeded to the franchise as well as the physical estate of the mortgagor by their purchase.
I am not prepared to say what the effect of this argument would be if the relators were seeking to re-incorporate the old company under the old name and with no increase of capital stock.
But that question is not presented here. They propose to-organize under a new name, and with largely increased capital stock, and that fact takes them out of the proposed case. If the theory of the relators can be applied to the present case, then the provisions of chapter 143 of the Laws of 1886 could be easily nullified. A corporation with a small capital could file its articles and pay its tax, mortgage its franchise and property and suffer a foreclosure and sale, and reorganize with capital stock to any amount, and thus evade the tax. The manifest object of the legislature was to compel the payment of this tax upon all the capital of a company organized after its enactment, and the members of this organization formed under it were presumed to know the public law, and are bound by its provisions.
If I am right in the above conclusions, it follows that the motion for a peremptory mandamus must be denied.
Motion denied, with ten dollars costs.